1 Sebastian W Protel
  ADC 349846
2 ASPC Eyman-Cook unit
  PO Box 3200
3 Florence, Arizona 85132-3200
  Plaintiff, Pro Se

United States District Court
District of Arizona

Sebastian W Protel
  Plaintiff,

  v.

Scott Sheffield;
Andrew Evans;
J.M. Spear;
Bryce Myrvang;
Jon Garrison;
Registered Agents, Inc. - A Corporation registered in the State of Wyoming; and
Linexium LLC - A Limited Liability company registered in the State of Wyoming
  Defendants.

No. CV-23-2158-PHX-SPL (JZB)

Complaint

Jury Trial Demanded

Plaintiff Sebastian W Protel accuses Defendants, collectively, jointly and/or severally, of both Conversion of Personal Property under Arizona Common law as well as infringement of his Intellectual Property ("IP") or copyrighted works in violation of federal law. Protel seeks actual, compensatory, and punitive damages, in addition to declaratory and injunctive relief.

1

## I. Jurisdictional and Venue Statement

1. Plaintiff's Claims are brought under 17 USC §§ 501-513 and 28 U.S.C. §§ 1322 and 1367.

2. Jurisdiction is Proper under 28 U.S.C. §§ 1331, 1332, 1343 and 1367.

3. The relief sought by Plaintiff is authorized by 17 U.S.C. §§ 502-505 and 28 U.S.C. §§ 1332, 1920, 1962-1963; 2201-2202; and Fed. R. Civ. P. 54, 57, 64, and 65.

4. This matter seeks damages in a sum that exceeds $75,000

5. Venue is Proper in the District of Arizona under 28 USC § 1391(b)(2)

## II. Parties

6. Plaintiff Sebastian W. Protel is a resident in the state of Arizona and was at all relevent times stated herein.

7. Defendant Scott Sheffield is a resident of the state of Texas.

8. Defendant Andrew Evans is a resident of the state of Texas.

9. Defendant Registered Agents, Inc. is a registered corporation in the state of Wyoming, located at 30 North Gould Street, Suite-R, Sheridan, Wyoming and is a jural entity.

10. Defendant J.M. Spear is a resident of the state of Wyoming.

11. Defendant Bryce Myrvang is a resident of the state of Wyoming.

12. Defendant Jon Garrison is a resident of the state of Wyoming.

13. Linexium, LLC is a registered Limited Liability company registered in the state of Wyoming located at 30 North Gould Street, Suite-R, Sheridan, Wyoming and is a jural entity.

III. General Allegations

14. In approximately late 2014 to 2015 Protel met Josh Tolento the owner of the Tolento Group LLC, a limited liability company. Registerd in the state of Arizona.

15. Protel began working as a Sub-Contractor for Tolento Group soon thereafter.

16. A few months after Protel began his work with the Tolento Group LLC, Tolento gave authorization to use the registered domain name "www.PrimeTimeDesigns.info" to build and/or create a website to showcase and promote Protel as a website designer, and to supplement his income.

17. Simultaneously with the creation of Prime Time Designs.Info, Protel created and/or registerd an account with PayPal, Inc. — in his name — to conduct business transactions.

18. During the course of operating Prime Time Designs.Info, Protel began to formulate a New website design agency — which was Prelimnarly designated as — "The Protel Group".

19. As the sole owner and operator, Protel then purchased the domain name "TheProtelGroup.us" from namecheap.com a/k/a NameCheap, Inc.

20. Thereafter, Protel entered into an agreement with, and paid, FyfeWeb, LTD a company based in the United Kingdom — to provide website hosting services for TheProtelGroup.us.

21. Upon launching The Protel Group, Protel changed the PayPal account — discussed in paragraph 17 — from a personal account to "The Protel Group."

22. All earnings and payments from the operation of The Protel Group were deposited directly into that PayPal account.

. . .

. . .

23. Approximately 6 months after the creation of The Protel Group, Protel met both Defendant Sheffield and Defendant Evans on an online community platform known as Discord.com.

24. The communication between Protel and Defendant Sheffield and Defendant Evans began as mere acquaintances discussing things like hobbies, games, music, movies, and the like; they did not discuss personal or business topics.

25. While operating The Protel Group, Protel began to formulate the idea of creating a "brand" rather than a personally connected name.

26. Protel began collaborating with an Australian citizen to create the identity of the brand — which lead to the name "Linexium" — and other logos to include Linexium, distinct geometric shapes, and other unique designs known as the "branding Pack". Protel owned the exclusive rights to these materials; this also included "Linexium Enterprises".

27. During the course of operating The Protel Group the website brought in approximately 10 active clients.

28. During the idea, collaboration, formation, and/or creation stages leading to linexium.com and the Linexium Brand, Protel did not communicate to either Defendants Sheffield or Evans about the ideas or plans.

29. Protel then purchased the domain name (Linexium.com) from Namecheap.com a/k/a Name Cheap, Inc., with The Protel Groups' PayPal account.

30. Protel then notified his clients that the Protel Group was being rebranded as "Linexium"; this was done via the Protel Groups' website (www.TheProtelGroup.us), emails, and other social media networking sites.

. . .

. . .

31. Simultaneously or contemporaneously with this notification, Protel began the authoring, creation, and formulation of the website: Linexium.com to include the Linexium logos, geometric designs, offerings, webpages and terms of service. This was all done "live". Protel then also loaded a system called WHMCS through a company with the same name. This system is made to manage clients, handle payments and support tickets.

32. Protel and an associate began to direct all clients and potential clients to Linexium.com.

33. After the launch, Protel — communicated to Defendants Sheffield and Evans — of the launching of Linexium.com.

34. Upon launching Linexium.com, Protel — as the sole owner and operator — changed the PayPal account, as discussed in paragraphs 17 and 21 from the "Protel Group" to "Linexium" and/or "Linexium Enterprises."

35. During the infancy of the launch and/or operation of Linexium Protel inquired of Defendants Sheffield and Evans whether they would volunteer to assist Protel with processing sales orders and responding to support tickets.

36. A sales order is processed by manual verification which entails logging into WHMCS' system at (my.linexium.com/admin) utilizing a username and password and manually verifying the purchase order, and clicking "aprove" or "reject."

37. A support ticket is a customer complaint or concern that requires being addressed and responded to.

38. Both Defendants Sheffield and Evans — indicated their willingness to volunteer in assisting Protel with these limited tasks.

...

...

5

39. Protel then created and assigned a username and password for both Defendants Sheffield and Evans to process sales orders and using the WHMCS system.

40. Within cPanel of Linexium.com, Protel created a username, password, and email addresses; Scott@linexium.com, Andrew@linexium.com; Protel communicated this information to the Defendants Sheffield and Evans; with the understanding that these Defendants would be limited to processing sales orders and responding to support tickets.

41. Defendants Sheffield and Evans were not given access, permission, or authorization to withdraw funds, make purchases, represent Linexium, or otherwise act on behalf of Protel or Linexium outside the limited scope discussed above.

42. Protel then purchased a group email account through Google G-Suite — now known as Google Workspace — to host the Linexium email accounts.

43. After purchasing the G-Suite, Protel setup the email services for Linexium.

44. Protel then deactivated all email accounts located on the Linexium cPanel and assigned, inter alia, Defendants Sheffield and Evans emails utilizing the G-Suite system, which mirrored the statement above in Paragraph 40.

45. Approximately 2 years after the launch of Linexium, Protel gave Defendant Sheffield administrative access to linexium.com for the limited purpose of updating offerings, content, or editing minor errors at the direction and consent of Protel.

46. During the course of operation of linexium.com, by November 2019, the website had approximately 40 to 50 active clients.

47. In November 2019 Protel was taken into custody based on the suspicion that he may have committed an unrelated criminal offence which resulted in his eventual placement in the Maricopa County Sheriff's Office's custody as a pretrial detainee.

48. While in the confines of MCSO, Protel was issued an electronic tablet by Global Tel*Link Corp, which services included email.

49. Shortly thereafter, Protel recieved an email from Defendant Sheffield in which he communicated his phone number for Protel to contact him.

50. During a phone call with Defendant Sheffield Protel asked him to log into PayPal account for the limited purpose of making a small transaction — of approximately $40.00 — to Protel's MCSO trust account.

51. Defendant Sheffield agreed to make this transaction at which time Protel gave Defendant Sheffield the account information for the sole and limited purpose of the transfer of these funds.

52. After only a few calls Defendant Sheffield stopped accepting Protel's calls.

53. Protel presumed that Linexium.com would cease to operate once the service would expire, except for the Google-suite n/k/a Google Workspace which Protel acquired; and would restart upon his release.

54. Protel owned and continues to own the exclusive rights to Linexium, Linexium Enterprises, Linexium logos, text styles and formation of Terms of Service; PayPal accounts, website content, the branding pack and all emails associated with linexium.com or those designated as @Linexium.com.

55. Protel did not authorize Defendant Sheffield to utilize the PayPal account — Discussed in Paragraphs 17, 21 and 34 — to withdraw any other funds, make payments, use, loan, spend, borrow, or otherwise transact Business.

56. Defendants Sheffield and Evans knew that Protel created, published, managed, purchased, owned, had exclusive rights over the Linexium Name, Linexium logos, Domain, Website, PayPal and Fyfe web account, branding pack, and any and all funds in and owed to those accounts.

57. Defendant Sheffield owed Protel a fiduciary obligation to not withdraw, convert, use, transact, or otherwise spend the funds belonging to or otherwise owed to Linexium and/or Protel.

58. In approximately mid 2022, while Protel was in the process of tutoring someone, Protel contacted the information services at Joel Valdez Main Library of the Pima County Public library, to obtain information about business related material, and included a request for information about companies Protel used to work for and/or created.

59. Upon receipt of the materials from the Pima County Library, Protel discovered that copies of webpages from linexium.com were included.

60. After seeing the Linexium.com pages, Protel was outraged, saddened, dejected, distressed, and dispondent.

61. Protel noticed on the "Contact Us" section that Linexium.com stated that it was powered by Linexium, LLC with a Wyoming address and Scott@linexium.com and Corp@linexium.com listed on the terms of service, with an updated date of October 24, 2021.

62. Linexium was created and operated from the state of Arizona, when Protel launched it in 2016, and did not consent nor authorize anyone to register, move or transfer Linexium outside the state of Arizona

63. At no time did Protel create, issue, consent to endorse or authorize the creation of or the use of the email: social@linexium.com.

64. Protel believes and therefore alleges that the Defendants — seperately and/or collectively took control of the Linexium.com domain, Linexium website, the Fyfe web account, the PayPal account, the Linexium logo and branding pack, and email accounts and converted them to their own use sometime between November 2019 and October 14, 2020.

65. Protel believes and therefore alleges that Defendants seperately and/or collectively have represented their self as the owner, creator, founder, and/or posseses the exclusive rights of the PayPal account, domain name, Linexium logos and "branding pack", website and content, Fyfe web account and email account.

66. Protel believes and therefore alleges, the Defendants — separately and/or collectively — issued or authorized other unknown parties to use, transmit, store, publish, convey, record, sell, resell, promote, or otherwise claim and/or imply ownership or association with or over the exclusive rights of ownership in Protel's intelectual and personal property as discussed above.

67. Protel believes and therefore alleges, that at the time Defendants Sheffield and Evans took control of the Domain name "Linexium.com" and Fyfe web account, all ownership fees were paid in full.

68. Protel did not authorize, condone, indicate, imply, acquiesce in, permit, consent to, or otherwise allow Defendants — or anyone else — to use, operate, advertise, alter, amend, register, edit, or access the PayPal or Fyfe web accounts, web domain, website, or the Linexium name, logos, branding pack or other digital assets to which Protel owned or had the exclusive rights to.

69. Protel did not assign, consign, impart, give, sell, contract with, authorize, allow, permit, confer, convey, any of Protel's exclusive rights of ownership over the tangible or digital rights or property discussed herein, nor to use any of Protel's intellectual property by any Defendant or anyone else.

70. Protel did not consent to Defendants — or anyone else — utilizing any of Protel's intellectual or personal property, or other financial assets.

71. Defendant Sheffield took the PayPal account, domain name, Fyfe web account, Google email account and the website — with it's contents — and converted them to his own use or that of another.

72. Protel believes, and therefore alleges, Defendant Sheffield used the PayPal account and the funds contained therein or owed there to — and continues to use that account; the Domain name Linexium.com; Fyfe web account; email accounts; website and its contents; the Linexium names, logos, and branding pack; and adopted or converted them to his own use or that of another in contravention of the exclusive rights of Protel.

73. During the course of composing this Complaint, a researcher discovered that "Sebastian Protel" is still listed online as the Owner of Linexium. Protel was notified of this finding on October 6, 2023. It states:

Sebastian Protel – Owner – Linexium Enterprises – LinkedIn
[Located at www.linkedin.com (last accessed on Oct. 6, 2023)]

74. A Google search of "Founder of Linexium, LLC" brings up the result set forth in Paragraph 73 as the first result, and other results discussed Protel.

75. On October 6, 2023, Protel also became aware that Linexium, LLC had been first registered as a Limited Liability Company on October 14, 2020, in the state of Wyoming, by Defendant Registered Agents, Inc.

76. Other than on LinkedIn and Google – as discussed in Paragraphs 73-74 – Protel is not mentioned, listed, noted, or otherwise designated as the author, creator, and/or designer of any of the intellectual property discussed in the preceding paragraphs since it was converted and/or unlawfully acquired by the Defendants separately and/or collectively.

77. On October 9, 2023, Protel discovered the following had been posted on the business review website – www.trustpilot.com:

> Review
> 3/29/20
> Linexium is a great company, there (sic) constant support and friendliness out does anyone else. Linexium and Seb[astian] has (sic) helped my business growth were it is today, I could not recommend them enough. – Sam C
>
> Reply
> Hey Sam, – Thanks for your kind words! – Sebastian P – Chief Executive Officer – Linexium Enterprises – Tucson Office

78. At and during the time the post in Paragraph 77 was made and replied to Protel was incarcerated and was unaware of this post, reply, action or content. It is believed, and therefore alleged, that one of the Defendants – individually and/or collectively – impersonated Protel.

79. Also on that date, Protel discovered that Registered Agents, Inc. was listed as the sole owner and member of Linexium, LLC

80. Thereafter, Protel learned that Defendants Spear, Myrvang, and Garrison are listed as the owners, Directors, managers, members, employees, or agents of Registered Agents, Inc., with the following titles: Spear (President / Director); Myrvang (Secartary); and Garrison (Treasurer).

81. Also Posted on trustPilot.com, is:

> Review
> 9/1/22
> The last 12 months have have (sic) been nothing but hosting issues and unacceptable response times. The new CEO changes hosting prices and plans without advising customers first. The low metered bandwidth makes hosting a medium traffic website unreliable overall Not a reliable hosting service.
>
> [Anonymous Posting]

82. Protel Believes, and therefore alleges, that Defendants Registerd Agents, Inc. Spear, Myrvang, Garrison, acquired Linexium, LLC and/or took over operations between October 24, 2021 and September 1, 2022.

83. Protel Believes, and therefore alleges, that Defendants — separately and/or collectively — intentionally, wilfully, or with reckless disregard of Protel's intellectual property rights sought to deceive customers and/or the Public — to include Government agencies — as to ownership of these rights.

84. As of the filing date of this action both Linexium LLC, and Linexium.com continue to operate.

...

---

It is equally possible that Defendant Sheffield represented himself as replacing Protel as Chief Executive Officer at this time while Registered Agents, Inc. was listed as Organizer of Linexium, LLC.

## IV. Causes of Action

### A. Count 1: Arizona Common law Conversion - PayPal Account

85. Protel incorporates by reference the preceeding paragraphs of this complaint as though fully set forth herein.

86. Under Arizona common law "Conversion is ... an act of wrongful dominion or control over personal property in denial of or inconsistent with the rights of another." Sears Consumer Fin. Corp. v. Thunderbird Prods, 802 P.2d 1034 (Ariz. App. 1990); Warfield v. Gardner, 346 F. Supp. 2d 1033, 1045 (D. Ariz. 2004)

87. Protel provided Defendant Sheffield access to the PayPal account for the sole and limited purpose of sending the small cash transfer with the understanding that no further transactions and/or withdrawls were to be made; further to this understanding Defendant Sheffield would cease all use of the PayPal account.

88. Protel owned and/or had the exclusive rights to all funds contained and/or owed to the Linexum's PayPal which was created and owed while in the State of Arizona.

89. Defendant Sheffield took, carried away, transfered or otherwise acquired the funds contained in and/or owed to the PayPal account and coverted them to his own use or that of another, without the consent or authorization of Protel.

90. Protel believes and therefore alleges, that the account contained and/or was owed in excess of $1000.00 with continuing deposits expected and/or owed by Linexum.com

### B. Count 2: Arizona Common law Conversion - The Linexium Name

91. Protel incorprates by reference the preceeding Paragraphs of this complaint as though fully set forth herein

92. Same as set forth in Paragraph 86 incorporated here by this reference.

93. Defendants - collectively or seperately - took, ceased, transfered and/or otherwise acquired the Linexium name that was created, owned, and/or to which Protel had the exclusive rights over and converted them to their own use or that of another without the consent or authorization of Protel

94. Protel owned and/or had the exclusive rights to the Linexium name by virtue of its creaton, formation, placement into a logo and/or brand, and its registration set forth above, and did so while resident in the state of Arizona

95. Defendants have profitted through the use of the Linexium name and/or brand

### C. Count 3: Arizona Common law conversion - Domain name "Linexium.com"

96. Protel incorprates by reference the preceeding Paragraphs of this complaint as though fully set forth herein

97. Same as set forth in Paragraph 86 incorporated here by reference.

98. Defendants collectively or seperately, took, ceased, transfered and/or otherwise acquired the domain name "Linexium.com" - that Protel had purchased from Namecheap Inc. - then converted it to their own use or that of another without the consent or authorization of Protel

99. Protel owned and/or had the exclusive rights to the domain name Linexium.com, By virtue of his purchase while resident in the state of Arizona

100. Defendants have Profited through the use of the domain name "Linexium.com"

### D. Count 4: Arizona Common law Conversion - Fyfe web Account

101. Protel incorpates by reference the Preceeding Paragraphs of this complaint as though fully set forth herein

102. Same as set forth in Paragraph 86 incorporated here by this reference

103. Defendants collectivly or separately took, ceased, tranferd, or otherwise acquired the Fyfeweb account — registerd under Protel and Purchased by him while a resident in the state of Arizona — and Converted it to their own use or that of another without the consent or authorization of Protel.

104. Defendants have Profited through the use of the Fyfe web Account.

### E. Count 5: Arizona Common law Conversion - Linexium Website

105. Protel incorpates by reference the Preceeding Paragraphs of this complaint as though fully set forth herein.

106. Same as set forth in Paragraph 86 incorporated here by this reference

107. Defendants, collectivly or separately, took, ceased, transferd, or otherwise acquired the content of the Linexium website — to include but not limited to the Linexium name, Linexium logos, branding Packs, Terms of service, offerings, and all other content — owned, created, or to which Protel had the exclusive rights which was formulated and owned by Protel while in the state of Arizona and converted it to their own use or that of another without the consent or authorization of Protel

108. The Defendants have Profitted through the use of the Linexium website

### F. Count 6: Arizona Common law Conversion - Email Accounts

109. Protel incorporates by reference the preceeding paragraphs of this Complaint as though fully set forth herein

110. Same as set forth in Paragraph 86 incorporated here by this refernce

111. Defendants Collectivly or separately took, ceased, transfered, or otherwise acquired control over Protel's Google G-Suite Accounts n/k/a Google Workspace and converted it to their own use or that of another without the consent or authorization of Protel, to include but not limited to: corp@Linexium.com, Social@Linexium.com, Scott@linexium.com, and Andrew@linexium.com.

112. Defendants have profitted through the use of the email accounts

### G. Count 7: Copyright Infringement - Protels Intellectual Property

113. Protel incorporates by refrence the preceeding paragraphs of this complaint as though fully set forth herein

114. The Linexium name, Linexium logos and branding packs, terms of service, offerings, and other original works of authorship contained on, in, or associated with the website to which Protel owned or had the exclusive rights to and are protected from infringement under 17 U.S.C. § 102 et seq.

115. Protel had the exclusive rights over the copyrighted works discussed above, Intellectual Property and/or copyrighted materials under 17 U.S.C. § 106, and did not grant, confer, or authorize anyone to use or otherwise manipulate, reproduce, prepare derivative works, distribute, change, copy, edit, sell, transfer, profit from, or give away these works.

116. The above discussed Intellectual Property/ Copyrighted materials are owned by Protel and there title were vested to him upon their creation under 17 U.S.C. § 201 (a)

117. Protel did not lease, sell, or trasfer his copyright ownership by any means nor did he execute an instrument of conveyance, a note or memorandom of transfer, nor did Protel authorize anyone else to do so, under 17 U.S.C § 204(a).

118. Protel knows of no exception or limitation of his exclusive rights of ownership over his intellectual property discussed above and does not seek to claim Infringement concering any acts authorized under 17 U.S.C § 101 et seq.

119. Defendants separately and/or collectively used, incorporated, reproduced, created a derived work from, distributed, copied, transfered, used, manipulated changed, edited or otherwise took control over Protels intellectual property discussed above, claiming it as their own work of authorship, creation, and/or ownership.

120. Defendants have profitted through use of Protel's intellectual property or copyrighted works.

## V. Injuries

121. Protel has suffered sleeplessness, emotional distress, anxiety, night mares, hopelessness, nervousness, change in appetite, digestive disorders, depression, finacial loss, embarassment, and significant trust issues.

122. Protel has suffered loss and control over his Intellectual property. Protel has lost the revenue, profits, lisening fees, and/or other profits his intellectual property earned, is earning, and will earn or would have earned as a result of the actions by Defendants. or

17

Defendants engaged in — Jointly and/or severally — by converting and/or infringing the exclusive rights of Protel.

## VI. Relief Requested

123. Protel requests the Court grant the following relief

(a). Award actual and compensatory damages, to include all profits of the infringer of Protel's intellectual or copyrighted works, against Defendants both jointly and severally;

(b). Award actual and compensatory damages as a result of the conversion of PayPal and Fyfeweb accounts; use of the Domain name; email accounts; the Linexium name; website, logos and branding pack, or other materials owned by or due to Protel, against Defendants both jointly and severally;

(c) Award Punitive Damages against Defendants Both Jointly and Severally;

(d) Declaratory relief that Defendants Jointly or severally violated Protel's rights;

(e) Injunctive Relief ordering Defendants to:
   (i) Cease the use of the Linexium Name and all forms thereof;
   (ii) Cease the use of Linexium.com and all forms thereof;
   (iii) Cease the use of the PayPal account;

(iv) Cease the use of the email accounts;

(v) Cease the use of the Fyfeweb accounts;

(vi) Cease the use of the BrandingPack and all associated Logos or other digital Content; and

(vii) Cease the use of the website and all content owned by or in which the exclusive rights belong to Protel.

(f) Award attorneys fees — if any; expenses, and cost under 42. U.S.C § 1988 and other applicable provisions of law; and

(g) Any other and all relief the court deems just and proper.

I declare under penalty of perjury that the above is true and correct to the best of my knowledge, information, and belief.

DATED this 17th day of October, 2023

*[signature]*

Sebastian W Protel, Plaintiff Pro Se